**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUNDERSEN LUTHERAN<br>MEDICAL CENTER, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL O. LEAVITT,<br>Secretary of Health and Human Services,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:06CV02195 (TFH)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to 42 U.S.C. § 1395rr(b)(7), an application for an exception to the Medicare end stage renal disease ("ESRD") composite payment rate "shall be deemed to be approved unless the Secretary <u>disapproves</u> it by not later than 60 working days after the date the application is filed." (Emphasis added.) In Defendant's Memorandum,[1] the Secretary explained that this provision by its terms requires only that exception requests be disapproved, not mailed, within 60 days. Def.'s Mem. at 10-13. Because the statute is silent as to the timing of notice, the Secretary's interpretation is reasonable. Here, Plaintiff's request was disapproved by a letter dated September 21, 2001, four days before the sixty-day statutory deadline, which fell on September 25, 2001. Therefore, this Court should uphold the Secretary's decision that the request should not be "deemed to be approved" pursuant to § 1395rr(b)(7).

---

[1] Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

I.  **The Secretary's Interpretation of the Statute is Entitled to Deference Under <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984)**

In his Memorandum, the Secretary pointed out that his interpretation of the Medicare statute must be upheld so long as it is "within the bounds of reasonable interpretation." Def's Mem. at 9 (citation omitted). Plaintiff, in response, asserts that "the Secretary has never issued any regulations" interpreting the ambiguous statutory provision at issue here. Pl.'s Reply at 6.[2] Plaintiff does not explain the import of this assertion. However, because the appropriate standard of review is a threshold issue for this Court's review, the Secretary briefly addresses this point in the event that Plaintiff's intended argument is that the Secretary is entitled to <u>Chevron</u> deference only when he interprets a statute by way of regulation.

As an initial matter, the Secretary has in fact promulgated regulations specifying the procedures for applying for an exception to the payment rates for ESRD services. <u>See</u> 42 C.F.R. § 413.180(h) (2001). However, the Secretary's regulations addressing the specific matter at hand – the timing of the Secretary's denial of an exception request – mirror the requirements set forth in the statute.[3] Thus, before the Administrator of CMS issued the administrative decision under review, he was faced with reviewing essentially identical regulatory and statutory provisions and applying them to the facts of this case. Plaintiff cannot gainsay the Secretary's

---

[2] Reply Memorandum In Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment.

[3] <u>Compare</u> 42 U.S.C. § 1395rr(b)(7) (An exception application "shall be deemed approved unless the Secretary disapproves it by not later than 60 working days after the date the application was filed.") <u>with</u> 42 C.F.R. § 413.180(h) (2001) ("An exception request is deemed approved unless it is disapproved within 60 working days after it is filed with its intermediary.").

decision to proceed in this manner.

Agencies are ordinarily allowed to choose in an adjudication among permissible interpretations of statutes that they are charged with administering; they do not need to choose between interpretations beforehand through notice-and-comment rulemaking. See Nat'l Labor Relations Bd. v. Bell Aerospace Co., 416 U.S. 267, 292-94 (1974); Sec. & Exch. Comm'n v. Chenery Corp. ("Chenery II"), 332 U.S. 194, 202-03 (1947). As the Court explained in Chenery II, this has to be the case because, for example, "problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. . . . In those situations, the agency must retain the power to deal with the problems on a case-by-case basis if the administrative process is to be effective." 332 U.S. at 202-03. The choice in proceeding with adjudication as opposed to further rulemaking "lies primarily in the informed discretion of the administrative agency." Id. at 203; see Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 96 (1995) ("The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication."); see also Bell Aerospace, 416 U.S. at 294. Thus, when the Secretary promulgated regulations mirroring the timing provision of the statute and left any further refinement of that interpretation for case-by-case adjudication, he did so in complete accord with the APA and Supreme Court case law.

Furthermore, the Secretary's decision to proceed in this manner does not deprive the Secretary's interpretation of any amount of deference. Indeed, the Supreme Court has noted that an agency's interpretation of the statute it administers, arrived at through adjudication, should be viewed through the lens of Chevron. "[T]he overwhelming number of [Supreme Court] cases

3

applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication." U.S. v. Mead Corp., 533 U.S. 218, 230 & n.12 (2001) (collecting Supreme Court cases applying Chevron deference in adjudications) (emphasis added). This level of deference is all the more appropriate where, as here, the court is confronted with an agency's interpretation, arrived at through adjudication, of a "complex and highly technical" program such as Medicare. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Alaska Dep't of Health & Soc. Servs., 424 F.3d 931, 939 (2005) (applying Chevron deference to Secretary's interpretation arrived at through adjudication in context of Medicaid program); Texas v. U.S. Dep't of Health & Human Servs., 61 F.3d 438, 440 (5th Cir. 1995) (same); Georgia v. Shalala, 8 F.3d 1565, 1566-68 (11th Cir. 1993) (same); New York v. Sullivan, 894 F.2d 20, 24 (2d Cir. 1990) (same). Thus, the Secretary's interpretation of the statute – that the Secretary need only disapprove an exception request within 60 days, not also notify the provider within 60 days – is an interpretation of the statute issued in the context of a formal adjudication that should be viewed by this Court through the lens of Chevron and upheld so long as it is "within the bounds of reasonable interpretation." Def.'s Mem. at 9.

**II.  The Secretary's Interpretation of 42 U.S.C. § 1395rr(b)(7) is Reasonable**

A.  42 U.S.C. § 1395rr(b)(7) Imposes No Deadline for Mailing Notice of a Disapproval

In support of his interpretation of the statute, the Secretary relied on Visiting Nurses Association Gregoria Affuant, Inc. v. Thompson, 447 F.3d 68 (1st Cir. 2006), which upheld the Secretary's interpretation of a similar regulation as requiring that a decision be made, not made and mailed, within a specified time frame. Def.'s Mem. at 12. There, as here, the statute and regulations were silent as to when notice had to be provided.

Plaintiff attempts to distinguish <u>Visiting Nurses</u> on the basis that it involved the Secretary's interpretation of a <u>regulation</u> not a statute. Pl.'s Reply at 5-6. Yet, Plaintiff does not explain the legal relevance of this distinction.[4] <u>Visiting Nurses</u> rejected as "unnatural" the plaintiff's interpretation of the regulation at issue as including a deadline for notice because that requirement did not appear in the plain language of the regulation. 447 F.3d at 73-74. The rejected interpretation would have been equally unnatural if it had construed a statute, rather than a regulation.

The Secretary also relied on <u>Sun Towers v. Heckler</u>, 725 F.2d 315 (5th Cir. 1984). In that case, the court of appeals rejected an argument that a decision by the Secretary was untimely because it was not mailed until four days after a statutory deadline had passed. <u>See</u> Def.'s Mem. at 11. The statutory provision at issue in that case required that the Secretary take specific action with respect to a decision by the Provider Reimbursement Review Board ("PRRB") within 60 days, but had "no additional requirement that the decision be . . . mailed within that 60-day review period." <u>Sun Towers</u>, 725 F.2d at 324. Plaintiff attempts to distinguish <u>Sun Towers</u> on the grounds that (1) in <u>Sun Towers</u>, the agency determination was made at the Administrator level, and (2) in <u>Sun Towers</u>, the Deputy Administrator signed and dated not only the decision at issue but also a "master control sheet" accompanying the file. Pl.'s Reply at 6. Again, Plaintiff does not explain the legal significance of these observations. The details of the <u>Sun Towers</u> case on which Plaintiff focuses are irrelevant to, and do not detract from, the legal proposition for which the Secretary relied upon <u>Sun Towers</u>; namely, that a regulatory (or – by extension –

---

[4] If Plaintiff's argument is that this distinction is relevant to the standard of review, Plaintiff is mistaken. <u>See</u> <u>supra</u> at 3-4 (The Secretary's interpretation of a statute he is charged with administering, arrived at in formal adjudication, is entitled to <u>Chevron</u> deference.).

5

statutory) deadline for agency decision-making does not, without more, impose the same deadline for the provision of notice.[5]

Moreover, Sun Towers placed no special emphasis on the mechanics of agency practice regarding the handling of PRRB files, such as signing a control sheet.  Rather, the court described what the agency practice was with respect to the review of PRRB decisions and stated that the Secretary's interpretation that her decision was effective and timely when she signed the decision and control sheet were due deference.  Sun Towers, 725 F.2d at 324.  Similarly here, the Secretary's view that his September 21, 2001 disapproval was effective when signed and therefore timely is reasonable and entitled to deference.

The reasoning in Visiting Nurses and Sun Towers demonstrates the error in Plaintiffs' suggestion that "disapprove" within the meaning of § 1395rr(b)(7) somehow encompasses the idea of notice.  See, e.g., Pl.'s Reply at 8 ("Only by communicating the decision to the Provider could the disapproval be made final.").  As those cases demonstrate, the rendering of a decision and the provision of notice are distinct acts.  Indeed, Congress has at times explicitly imposed deadlines for both the making of a decision and the provision of notice, see Def.'s Mem. at 12-13, but other times only imposed a deadline for making the decision.  This is one of the latter situations.

Plaintiff sets forth a hypothetical which is intended to show that the Secretary does not "disapprove" an exception request until the disapproval decision is actually mailed.  See Pl.'s

---

[5] Like Plaintiff here, the Sun Towers plaintiffs urged the court to "hold that the Secretary's decision does not become effective until it is mailed to prevent the Deputy Administrator from backdating his decisions."  Sun Towers, 725 F.2d at 325 n.14.  The court "declined to adopt such a prophylactic rule."  Id.

Reply at 8. In Plaintiff's hypothetical, an agency official prepares a denial letter on the 57th working day and sends it to the intermediary but then, on the 60th working day, instructs the intermediary not to send the letter. Then, on the 61st working day, the agency official instructs the intermediary to send the denial letter that was originally sent on the 57th working day. According to Plaintiff, this hypothetical illustrates that there must be "some objective act of communicating" in order for a decision to become final. Pl.'s Reply at 3. Plaintiff's hypothetical is inapposite for two reasons. First, as explained above, the "finality" of the disapproval letter as compared with some other document is simply not at issue here. In this case, there are no other documents competing with the September 21, 2001 denial of Plaintiff's exception request. Second, there <u>is</u> objective and incontrovertible evidence as to when the disapproval was issued – namely, the date that appears upon the letter (September 21, 2001), a date which places the disapproval well within the statutory deadline.

      B.      The Issue Before this Court is Whether the Secretary Timely Disapproved Plaintiff's Request by Denying it in Writing within Sixty Days – Not Whether the Denial Was Then "Final" for FOIA or Other Purposes

Plaintiff offers various arguments that focus on whether the September 21, 2001 letter was "final" for various purposes that are not implicated here, such as for review under the Administrative Procedure Act ("APA") or for purposes of the Freedom of Information Act ("FOIA"). For example, Plaintiff attempts to rely on <u>Gallup v. Federal Energy Regulatory Commission</u>, 702 F.2d 1116 (D.C. Cir. 1983), in support of its argument that the disapproval letters did not become "effective merely by virtue of being signed" within the statutory deadline. Pl.'s Reply at 3-4. In <u>Gallup</u>, two parties each sought review under the APA in different circuits of a FERC order – one party sought review in the Tenth Circuit, and another party sought review

in the D.C. Circuit. The D.C. Circuit addressed the "first-filing rule" set forth in 28 U.S.C. 2112, and described itself as a "finish-line umpire[] in a 'race to the courthouse.'" Gallup, 702 F.2d at 1118. Multiple petitions had been filed by both parties, including some that were filed even before FERC's formal order had been posted. The D.C. Circuit dismissed the petitions that pre-dated FERC's final order. This is the context for the language cited by Plaintiff as to when a decision is "final." Pl.'s Reply at 4 (quoting Gallup, 702 F.2d at 1123).

Clearly, Gallup has no bearing on whether the Secretary disapproved the ESRD composite rate exception request within 60 days as required by 42 U.S.C. § 1395rr(b)(7). Unlike Gallup, this case does not involve an analysis of competing petitions for review or the circulation by an agency of a draft decision for comment. Cf. Gallup, 702 F.2d at 1123 (stating that an agency's circulation of a draft order for comment does not provide a basis for judicial review). This case is more straightforward. Here, the Secretary simply interpreted § 1395rr(b)(7) to require that an exception request be disapproved, not disapproved and mailed, within sixty days. In other words, this matter turns on the meaning of "disapprove" in § 1395rr(b)(7), not the meaning of "final" in, or for the purposes of, some other statute. Questions about whether the disapproval letter was final for purposes of starting a race to the courthouse, triggering the right to judicial review under the APA, or triggering FOIA rights are distractions from the issue at hand.

Plaintiff continues to argue that the Secretary had an obligation pursuant to FOIA to either place the disapproval letter in its electronic reading room or provide copies of the disapproval to Plaintiff within the sixty working day deadline set forth in 42 U.S.C. § 1395rr(b)(7). Pl.'s Reply at 7-10. Yet, Plaintiff has brought a claim pursuant to the Medicare

statute, 42 U.S.C. § 1395oo(f)(1), not FOIA.  See Compl. ¶ 3.  The relief which Plaintiff seeks is in no way connected to the relief which may be afforded under FOIA; nor does Plaintiff cite a single case which indicates that the Secretary's substantive decisions regarding the Medicare program should be judged by reference to FOIA.  As the Secretary stated in his Memorandum, Def.'s Mem. at 14, there is nothing about FOIA – a statute that governs the disclosure of government records – that can impose stricter deadlines for the Secretary's actions than those contained within the Medicare statute itself.  See also Sun Towers, 725 F.2d at 323-24 (rejecting argument that, in order for the Secretary's administrative decisions to be timely, they must be "placed in the public domain" because only then would the decisions become final for purposes of the Federal Rules of Civil Procedure).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendant's Memorandum, the Secretary respectfully requests that this Court grant Defendant's motion, deny Plaintiff's motion and enter judgment for the Secretary.

Respectfully submitted,

    /s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

    /s/
CHRISTOPHER HARWOOD
N.Y. Reg. No. 4202982
Assistant United States Attorney
Civil division
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0372

    /s/
ROBERT W. BALDERSTON
U.S. Department of Health and Human Services
Offices of the General Counsel
Centers for Medicare and Medicaid Services Division
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 619-3601/FAX (202) 260-0490

OF COUNSEL:

DANIEL MERON
General Counsel

CAROL J. BENNETT
Acting Associate General Counsel
for Litigation

MARK D. POLSTON
Deputy Associate General
Counsel for Litigation

United States Department of
Health and Human Services